302 Ga. 86
FINAL COPY

S17A0901.  MARTINEZ v. THE STATE.

BENHAM, Justice.

Appellant Maurilio Martinez appeals his convictions for the rape and murder of Joy Morris.[1]  Appellant urges this Court to reverse his convictions because he contends the evidence was insufficient to convict him of rape, trial counsel was ineffective when he failed to move for a directed verdict on the rape charge, and the trial court erred when it overruled his objection to certain comments the prosecutor made during closing argument.  For the reasons set forth below, we affirm.

1.  (a) The facts viewed in a light most favorable to upholding the jury's verdicts show that, on the morning of November 1, 2002, police, who were responding to a call about a suspicious person/vehicle, discovered

---

[1] The crimes occurred on or about October 31, 2002.  On March 26, 2010, a Lowndes County grand jury indicted appellant for malice murder and rape.  Appellant was tried before a jury on February 4-6, 2013, with the jury returning verdicts of guilty on both charges.  The trial court sentenced appellant to life in prison for malice murder and 20 years to be served concurrently for rape.  Appellant moved for a new trial on March 4, 2013, the trial court held a hearing on the motion on July 25, 2015, and the trial court denied the motion on August 21, 2015.  Appellant filed a notice of appeal on August 24, 2015, and, upon receipt of the record, the case was docketed in this Court for the April 2017 term and submitted for a decision on the briefs.

Morris deceased in her black Mustang in Lowndes County.  Morris lived in Kentucky, but had been working in Lowndes County and, according to her husband, she was going to spend the night in the motel near where police discovered her vehicle.  When the police found her, Morris was slumped in the driver's seat of the vehicle, which was pushed back in such a manner that she would not have been able to operate the vehicle.  Morris had a phone cord wrapped around her neck, her shirt and bra were raised above her breasts, her pants were unbuttoned and slightly down her hips, and she was not wearing underwear.  Morris had blood coming from her ear.  The victim's car was in drivable condition, but Morris was positioned in such a way that her feet could not reach the pedals and she only had one shoe on.  The other shoe was found under the front, passenger-side bumper of her vehicle.  In addition, an impression of a forearm was found on the hood of the car.  Upon measuring the angle of the impression in relation to the hood of the car and the ground, authorities concluded the impression was consistent with someone of the victim's height.  Blood belonging to the victim was also found on the hood.  Additionally, there were drag marks on the ground that went from the passenger side of the vehicle to the driver's side.  Inside her vehicle, police recovered a gas station receipt, showing that

2

Morris had purchased gas at a nearby gas station at about 9:00 p.m. October 31. Morris's husband testified that he last spoke to his wife on the phone at 8:00 or 9:00 that night.

During the autopsy, the medical examiner performed a rape kit and discovered spermatozoa inside the victim's vagina, although there was no bruising to her genitals. The medical examiner testified Morris had butalbital, a type of barbiturate, in her blood in an amount that was sufficient to render her unconscious. He also opined that the victim's unconsciousness would explain why there was no bruising of her genitalia upon being sexually assaulted. The medical examiner testified that the contents of Morris's stomach indicated that she had eaten approximately an hour before her death. The medical examiner concluded the cause of death was ligature strangulation and explained that it appeared the phone cord had been wrapped around Morris's neck about two or three times and that the hemorrhaging in her neck suggested the phone cord had been pulled on her neck from right to left and from front to back. Morris also had "grab marks" on her arms, scratches on her body and extremities, and abrasions and a laceration to her face.

3

The spermatozoa collected during the autopsy was submitted for DNA testing, and the resulting DNA profile was entered into a national database. At that time a match was made to someone identified as Miguel Santizo in the database. Despite the DNA match, the case went cold for seven years. In 2009, appellant was arrested in Florida, and the DNA he submitted during that arrest came up as a match to the DNA collected in Morris's rape kit. When interviewed by officers investigating the Morris case, appellant admitted that, as a migrant worker, he used a number of aliases[2] and admitted he had been working in Lowndes County around the time of the victim's death. Appellant denied ever knowing or meeting the victim, and he had no explanation for the presence of his DNA in the rape kit. Appellant told authorities that when he was drunk, he often had no memory of what he did while intoxicated. During one of the interviews with appellant, a detective collected a DNA sample directly from appellant and that sample also matched the DNA collected from Morris's rape kit seven years earlier. In addition, appellant's known DNA profile could not be excluded as the source

---

[2] At trial, the State showed that appellant, Miguel Santizo, and Sebastian Moreno were one and the same person by presenting DNA evidence, fingerprint evidence, and in-court identifications by law enforcement officers who had past encounters with appellant going by one of his aliases.

4

of DNA material collected from the phone cord wrapped around the victim's neck.

(b) OCGA § 16-6-1 (a) (1) provides that a person commits rape when that person has carnal knowledge of a female forcibly and against her will. Appellant argues that because there was no injury to Morris's genitalia that the evidence was insufficient to show that any carnal knowledge of Morris was forcible. This argument is without merit. "Vaginal trauma and physical injury are not necessarily a constituent element of the criminal offense of rape." Searcy v. State, 158 Ga. App. 328 (2) (280 SE2d 161) (1981). See also Skipper v. State, 257 Ga. 802 (1) (b) (364 SE2d 835) (1988) ("Other than the penetration of the female sex organ by the male sex organ, the infliction of physical injury is not an element of the offense of rape.") The medical examiner explained that the lack of injury to Morris's genitalia was consistent with the fact that she was likely unconscious due to the butalbital in her system. Furthermore, there was other evidence that Morris was forcibly assaulted, including the acute abrasions to her face and extremities, "grab marks" on her arms, her blood being found on the hood of her vehicle, and drag marks on the ground indicating she was dragged from one side of the vehicle to the other. The evidence was sufficient to authorize a rational

trier of fact to find appellant guilty beyond a reasonable doubt of rape, as well as malice murder. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant alleges trial counsel rendered ineffective assistance by failing to move for a directed verdict on the charge of rape.

In light of this Court's holding in [Division 1 (b)] that the evidence adduced at trial satisfied the requirements of Jackson v. Virginia, . . . counsel's failure to move for a directed verdict [on the rape count] presents an insufficient ground as a matter of law for claiming ineffective assistance of counsel.

(Citations and punctuation omitted.) Jones v. State, 278 Ga. 880 (608 SE2d 229) (2005).

3. During closing argument, the prosecutor argued as follows:

[The crime scene investigator] measured from the ground to where that [forearm] impression is left on the hood, and guess who it matched? Joy Morris. From the ground to where that impression is to Joy Morris's height. So where did the sexual assault and rape happen? The hood of the car. He had her bent over the hood of that car.

6

Appellant objected on the ground that the statement assumed facts not in evidence, namely that the sexual assault occurred over the hood of the car. The trial court overruled his objection. On appeal, appellant contends the trial court committed reversible error in failing to sustain his objection. We disagree.

Attorneys are generally granted wide latitude in making closing arguments and may argue points that may be reasonably inferred from the evidence. See Menefee v. State, 301 Ga. 305 (4) (a) (801 SE2d 782) (2017). Here the evidence showed there was a forearm impression on the hood of the car; the measurements from the forearm impression in relation to the car's hood and the ground matched the victim's height; one of the victim's shoes was wedged under the passenger side bumper of the car; appellant's blood was on the hood of the car; the victim had abrasions to her face and extremities; and appellant's DNA was found inside the victim's body. Based on this evidence, it was not unreasonable for the State to infer in its argument to the jury that the rape occurred over the hood of the car. The trial court did not commit reversible error.

Judgment affirmed. All the Justices concur.

Decided September 13, 2017.

Murder. Lowndes Superior Court. Before Judge Tunison.

Conger & Smith, Gregory D. Smith, for appellant.

Bradfield M. Shealy, District Attorney, Michelle T. Harrison, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.