308 Ga. 146
FINAL COPY

S19A1411.  CALHOUN v. THE STATE.

BENHAM, Justice.

Appellant Thanquarius Calhoun was convicted of felony murder and various misdemeanors in connection with the death of Marion Shore.[1]   On appeal, Calhoun argues that his trial counsel

---

[1] The crimes occurred on May 14, 2013. On March 19, 2014, a Franklin County grand jury indicted Calhoun for felony murder predicated on fleeing or attempting to elude a police officer, homicide by vehicle in the first degree, felony fleeing or attempting to elude a police officer, reckless driving, speeding, failure to maintain lane, driving while license suspended or revoked, and failure to wear a safety belt. At Calhoun's March 2015 trial, a jury found him guilty on all counts. The trial court sentenced Calhoun to serve life in prison for felony murder and twelve months each for speeding, failure to maintain lane, and driving while license suspended or revoked, all to run concurrent to his murder sentence. Finally, Calhoun was fined $25 for failure to wear a safety belt. All other counts merged for sentencing.

Calhoun filed a motion for new trial on April 1, 2015, which he amended on December 15, 2015. The trial court denied the motion as amended on February 19, 2016. Calhoun filed a timely notice of appeal to this Court on March 21, 2016, and the case was docketed to this Court on August 1, 2016, as Case No. S17A0005. However, on August 2, 2016, before any briefs were filed, counsel for Calhoun filed a notice of substitution of counsel, and, on August 10, 2016, Calhoun moved for a remand so that he could raise claims of ineffective assistance of trial counsel for the first time. On September 12, 2016, this Court granted the motion for remand.

On March 2, 2017, Calhoun filed a motion for new trial. After a hearing held December 8, 2017, and April 2, 2018, the trial court denied Calhoun's motion on April 1, 2019. Calhoun filed a timely notice of appeal to this Court

rendered constitutionally ineffective assistance. We disagree and affirm.

Reviewing the record in a light most favorable to the verdicts, the evidence presented at trial established as follows. On May 14, 2013, a Banks County Sheriff's deputy was traveling northbound on I-85 in his patrol car when a gray Toyota Corolla passed him traveling approximately 95 miles per hour. Calhoun, whose license was suspended, was driving, and Shore was in the passenger seat. The deputy attempted to initiate a traffic stop, but Calhoun did not comply, and a high-speed pursuit ensued. Deputies attempted to stop Calhoun by boxing him in and by deploying spike strips, but neither countermeasure was effective; the chase continued for approximately twenty miles and, at times, exceeded 110 miles per hour. At some point, Georgia State Patrol Trooper Donnie Saddler joined the pursuit and, following discussions with fellow law

on April 26, 2019, and this case was docketed in this Court to the August 2019 term and was orally argued on October 22, 2019.

2

enforcement, performed a "PIT" maneuver[2] — a tactical intervention in which a law enforcement officer matches the speed of a fleeing vehicle, uses his or her vehicle to "tap" the bumper of a fleeing vehicle, and causes the fleeing vehicle to "spin out," thereby ending the pursuit. Following the maneuver, Calhoun's vehicle left the road, flipped several times, and crashed into trees. Though he was not wearing his seatbelt, Calhoun survived the incident; Shore, however, was partially ejected and died as a result of her injuries.

Multiple law enforcement officers identified Calhoun as the driver of the vehicle and testified that he was seen weaving in and out of traffic, passing cars in the emergency lane, and driving in a generally erratic manner. Multiple witnesses also testified to seeing what appeared to be United States currency being thrown from the vehicle during the pursuit; law enforcement were later dispatched to recover the currency, and the recovered bills — which were

---

[2] The transcript is replete with inconsistent expansions of the PIT acronym (though there is no corresponding inconsistency as to the nature of the technique or how it is performed); as such, we refer to the technique using the acronym.

suspected to be counterfeit — were admitted into evidence at trial.

1. Though not raised by Calhoun as error, in accordance with this Court's standard practice in appeals of murder cases, we have reviewed the record and find that the evidence, as stated above, was sufficient to enable a rational trier of fact to find him guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Calhoun argues that trial counsel was ineffective in trial preparation and defense presentation, in failing to object during the State's opening statement and closing argument, in failing to object to various evidence and testimony, and, finally, in counseling Calhoun regarding the State's pre-trial plea offer.

Calhoun's claims can succeed only if he demonstrates both that his trial counsel's performance was deficient and that he suffered prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To prove deficient performance, [Calhoun] must show that his lawyer performed at trial in an objectively unreasonable way

4

considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). As to prejudice, Calhoun must establish that "the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious that they likely affected the outcome of the trial." *Jones v. State*, 305 Ga. 750, 755 (4) (827 SE2d 879) (2019).

"[S]atisfaction of this test is a difficult endeavor. Simply because a defendant has shown that his trial counsel performed deficiently does not lead to an automatic conclusion that he was prejudiced by counsel's deficient performance." *Davis v. State*, 306 Ga. 140, 144 (3) (829 SE2d 321) (2019). And "[i]f an appellant is unable to satisfy one prong of the *Strickland* test, it is not incumbent upon this Court to examine the other prong." (Citation and punctuation omitted.) Id. at 143. With these principles in mind, we address Calhoun's arguments in turn.

(a) Calhoun first complains that trial counsel did not adequately prepare for trial and put forth no defense. As Calhoun

5

reads the record, trial counsel spent very little time preparing for trial, conducted an anemic cross-examination of a few of the State's witnesses, and failed to articulate a cohesive and focused defense. According to Calhoun, trial counsel should have focused on developing a defense establishing that "the PIT maneuver was an intervening cause of Marion Shore's death." To this end, Calhoun asserts that trial counsel should have: conducted additional research into the PIT maneuver; secured training and policy materials regarding the maneuver from the Georgia State Patrol; conducted a more thorough cross-examination of the troopers regarding their training, the use of the PIT maneuver, and the various Georgia State Patrol policies concerning the tactic; and retained an expert witness on the PIT maneuver. However, assuming without deciding that counsel's trial preparation and defense presentation fell below an objective standard of reasonableness and, thus, constituted deficient performance, Calhoun has failed to demonstrate prejudice.

"[T]he felony murder statute requires only that the defendant's

felonious conduct proximately cause the death of another person."

*State v. Jackson*, 287 Ga. 646, 660 (697 SE2d 757) (2010).

"[P]roximate cause exists when the accused's act or omission played a substantial part in bringing about or actually causing the victim's injury or damage and the injury or damage was either a direct result *or a reasonably probable consequence of the act or omission.*" (Citation and punctuation omitted; emphasis supplied.) *Chaney v. State*, 281 Ga. 481, 482 (640 SE2d 37) (2007). "In cases of felony murder . . . legal cause will not be present where there intervenes (1) a coincidence that is not reasonably foreseeable . . . or (2) an abnormal response." (Citation and punctuation omitted.) *Skaggs v. State*, 278 Ga. 19, 20 (596 SE2d 159) (2004). However,

> [i]f the character of [an] intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.

*Guzman v. State,* 262 Ga. App. 564, 568 (586 SE2d 59) (2003).

7

As an initial matter, the Georgia State Patrol policies and procedures concerning the PIT maneuver — which Calhoun vehemently contends should have been the focus of counsel's preparation and defense — were actually brought out at trial *by the State.* Both Trooper Al Whitworth and Trooper Saddler testified on direct examination about factors that should be considered before the PIT maneuver is to be utilized. Indeed, Trooper Saddler testified that the use of the maneuver was a carefully defined policy and required law enforcement to consider, among other things, the reason a vehicle is fleeing, the general safety of the public, and the dangers associated with the continued pursuit. Further, though Calhoun makes much of the fact that Trooper Saddler had not apparently been trained on the PIT maneuver at speeds exceeding 100 miles per hour, this fact, too, was brought out at trial. Trooper Saddler explained during direct examination that his training on the PIT maneuver occurred at 35 miles per hour.

These evidentiary considerations aside, nothing presented at the hearing on the motion for new trial would have established that

8

the use of the PIT maneuver was an intervening cause. Notably, the expert tendered by Calhoun at the hearing on his motion for new trial was expressly *not* tendered as an expert "in actually performing the maneuver." Instead, the witness — a sociologist — was qualified as an expert on *police procedures,* and his testimony explored the "factual circumstances that an officer is supposed to consider when determining whether the use of [the] PIT [maneuver] is appropriate." At best, Calhoun's presentation merely called into question the propriety of the Georgia State Patrol policies on the PIT maneuver — namely that the policies do not limit the speed at which the maneuver may be performed — and suggested that Trooper Saddler may not have fully complied with these policies when considering and utilizing the PIT maneuver in this instance (though his trial testimony indicates that he did); simply put, Calhoun has challenged Trooper Saddler's judgment in deciding to perform the PIT maneuver. This is insufficient to establish an intervening cause. See *Neal v. State*, 290 Ga. 563 (1) (722 SE2d 765) (2012) (ordinary negligence of third party generally insufficient to

9

constitute intervening cause); *Hendrick v. State*, 257 Ga. 17 (5) (354 SE2d 433) (1987) (same).

Even taking into account Calhoun's presentation at the hearing on his motion for new trial, it was reasonably foreseeable — and not abnormal — that Calhoun's high-speed antics might cause another car — whether law enforcement or not — to strike Calhoun's vehicle or otherwise cause Calhoun to lose control of his vehicle, resulting in a catastrophic incident for Calhoun, his passengers, or occupants of other vehicles. See *Skaggs*, 278 Ga. at 20 (victim's injuries and death from fall after being struck in face by defendant reasonably foreseeable); *Kirk v. State*, 289 Ga. App. 125, 127 (656 SE2d 251) (2008) (reasonably foreseeable that improper lane change by tractor-trailer could cause victim's vehicle to be struck, careen out of control into median, and then be struck by second truck). Thus, Trooper Saddler's actions did not amount to an intervening cause. As such, even if trial counsel's trial preparation and defense presentation were constitutionally deficient, trial counsel's failure

10

in this regard did not affect the outcome of Calhoun's trial.[3]

(b) Calhoun next claims that the State's opening statement and closing argument were filled with "baseless" comments and "imaginary" evidence and, consequently, that trial counsel should have objected. Specifically, he contends that trial counsel should have objected during opening statement when the prosecutor asserted that Calhoun was "solely to blame for the situation that led to the death of Marion Shore" and, also, when the prosecutor described Shore as "an innocent, unwilling passenger who was trapped in [Calhoun's] vehicle." Likewise, Calhoun asserts that trial

---

[3] Calhoun also contends that trial counsel was ineffective for failing to have the jury specifically instructed on proximate and intervening cause. However, the jury was adequately instructed on causation with respect to felony murder. As such, Calhoun has failed to demonstrate prejudice. See *Taylor v. State*, 290 Ga. 245 (2) (719 SE2d 417) (2011) (trial counsel not ineffective for failing to request a jury instruction specific to circumstantial evidence where, considering the instructions as a whole, the jury was properly instructed on that point of law); *Butts v. State*, 273 Ga. 760, 768 (546 SE2d 472) (2001) (where trial court's instructions were adequate as given, appellant could not show prejudice in trial counsel's failure to request charge). See also *Whiting v. State*, 296 Ga. 429 (768 SE2d 448) (2015) (no plain error resulted from trial court's failure to charge jury on proximate cause where jury instructions, read as whole, properly instructed the jury on the issue of felony murder causation). Further, for the reasons discussed above, even if the jury had been presented with Calhoun's additional evidence and these jury instructions, we cannot say that a reasonable jury would have reached a different verdict.

11

counsel should have objected during closing argument when the prosecutor posited that drivers on I-85 were "scared because they thought [Calhoun] would cause them to wreck . . . [and] los[e] their lives" and that the trooper performed the PIT maneuver because he knew "Calhoun was not going to stop" and would "continue to put lives at risk."

As an initial matter, there is no indication that counsel was asked about these remarks during his testimony at the hearing on Calhoun's motion for new trial. A decision by trial counsel to refrain from objecting to remarks by the State during opening statement or closing argument "may indeed fall within the ambit of trial strategy," *Holmes v. State*, 273 Ga. 644, 647 (543 SE2d 688) (2001), and, "[i]n the absence of testimony to the contrary, counsel's actions are presumed strategic." Id. In any event, nothing suggests that the prosecutor's remarks were, in fact, improper. While Calhoun may disagree with the prosecutor's characterization of the evidence, the prosecutor was within bounds during opening statement to elaborate on what he expected the evidence to show, see *Menefee v.*

12

*State*, 301 Ga. 505 (4) (a) (801 SE2d 782) (2017), and then, in closing argument, to draw reasonable inferences from the evidence actually presented at trial, see *Martinez v. State*, 302 Ga. 86 (3) (805 SE2d 44) (2017). Given the nature of the prosecutor's comments, an objection was unnecessary, and counsel is not ineffective for failing to lodge a baseless objection. See *Wesley v. State*, 286 Ga. 355 (3) (c) (689 SE2d 280) (2010). Accordingly, Calhoun has failed to demonstrate that trial counsel's performance was deficient in this regard and, as such, the claim fails.

(c) Calhoun also argues that trial counsel should have objected when the State introduced the following evidence: crash-scene photographs; evidence showing that, at the time of the incident, Calhoun was already under indictment for, inter alia, fleeing or attempting to elude a police officer, speeding, and reckless driving; and the alleged counterfeit money. We address each in turn.

(i) The State introduced eight crash-scene photographs depicting Shore's body in the vehicle wreckage. Calhoun contends

13

that the photographs were irrelevant and unduly prejudicial and, as such, that trial counsel was ineffective for failing to object. At the hearing on Calhoun's motion for new trial, counsel testified that he did not object to the photographs because he believed that they were admissible and that any objection would have been unsuccessful. Counsel also testified that he had concerns about autopsy photographs — which depicted Shore naked — and that he was successful in excluding those exhibits.

A review of the crash-scene photographs reflects that they simply depict Shore's body as it came to rest after Calhoun's car flipped. These photographs, "as crime-scene photos in murder cases go, . . . [are] not especially gory or gruesome." (Citations and punctuation omitted.) *Davis*, 306 Ga. at 145. Further, these photographs tend to establish the cause and nature of Shore's death, as well as her identity. Id. As we have held before, "photographic evidence that fairly and accurately depicts a body or crime scene and is offered for a relevant purpose is not generally inadmissible under [OCGA § 24-4-403] merely because it is gruesome." *Plez v. State*,

14

300 Ga. 505, 508 (3) (796 SE2d 704) (2017). As such, it was reasonable for trial counsel to conclude that these exhibits were admissible — and that any objection would thus be fruitless — and to focus his efforts on exhibits he found more troubling. See *Davis*, 306 Ga. at 145-146 (3) (c).

(ii) Prior to trial, the State provided notice of its intent to present evidence of other acts pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)"). Specifically, the State sought to present evidence that, just two weeks before this incident, Calhoun had been involved in a different high-speed chase and, consequently, had been charged with, inter alia, fleeing or attempting to elude a police officer, reckless driving, and speeding; the State sought to use the evidence to prove intent, knowledge, and identity. Following a hearing, the trial court granted the State's motion. Now, Calhoun argues both that trial counsel failed to object and, also, that the State "offered no argument as to the connection or similarity between Calhoun's [earlier] arrest . . . and the current case."

However, the record is clear that trial counsel did, in fact,

15

object. During a pretrial hearing, trial counsel objected to the State's motion and argued that the evidence of the earlier offenses was absolutely irrelevant to the State's prosecution of the current offenses. As to Calhoun's claim concerning the State's failure to prove "similarity," his argument — and the cases cited in support of it — is grounded exclusively in Georgia's *former* Evidence Code, namely, the admissibility of "similar transaction evidence." See *Hanes v. State*, 294 Ga. 521, 522 (755 SE2d 151) (2014). Because Calhoun does not articulate what argument, if any, trial counsel should have made with respect to Rule 404 (b) — which was the basis of the trial court's ruling — he has not demonstrated that trial counsel performed deficiently in this regard. Moreover, even if trial counsel did perform deficiently in failing to object, the evidence against Calhoun was strong, and, thus, he has not shown that the other acts evidence prejudiced him such that the outcome of his trial would have been different if trial counsel had made a successful objection. See *Davis v. State*, 302 Ga. 576 (6) (a) (805 SE2d 859) (2017).

16

(iii) Next, Calhoun complains that trial counsel failed to object when the State introduced the alleged counterfeit bills that were released from Calhoun's vehicle as he drove down I-85. According to Calhoun, the State used the counterfeit bills to suggest wrongdoing and explain why he fled from law enforcement, but, he says, "[e]vidence . . . as to why [he] led police officers on a high-speed chase was irrelevant and immaterial to the finding of guilt on any charge at issue in this case." Calhoun continues, arguing that, had an objection been made, the trial court "may have found the evidence inadmissible because [Calhoun's] motivation for speeding is not part of the [charged] crime[s]." This claim lacks any merit.

"'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. Here, the counterfeit bills were relevant to explain why Calhoun engaged in such dangerous behavior leading up to the fatal crash. Though motive is not an essential element of any offense, evidence of motive

17

is generally relevant in murder prosecutions, see, e.g., *Romer*, 293 Ga. at 341 (1) (b), and trial counsel did not perform deficiently in failing to object.

(d) Calhoun asserts that counsel "did not fully discuss" with him a pre-trial plea offer extended by the State; Calhoun also asserts that he "did not reject the State's [plea offer] outright, but instead proposed . . . an alternative plea" that was never communicated to the State by counsel. This claim, like the others, fails.

As a factual matter, it is clear from the transcribed pre-trial proceedings and the hearing on Calhoun's motion for new trial that counsel presented the State's plea offer to Calhoun, that counsel discussed the plea offer with Calhoun and recommended that he accept it, and that Calhoun rejected the plea offer. In fact, the record establishes that Calhoun personally rejected the plea offer in writing. As such, the trial court was authorized to conclude that trial counsel did not perform deficiently in this regard. Nevertheless, even if we were concerned that trial counsel had failed to properly advise Calhoun of the plea offer, Calhoun has made no

18

showing that, but for trial counsel's alleged failures in this regard, he would have accepted the State's plea offer (and that the trial court would have accepted its terms) or, alternatively, that the State (and trial court) would have accepted the terms of his "counteroffer."[4] See *Lafler v. Cooper,* 566 U. S. 156, 164 (132 SCt 1376, 182 LE2d 398) (2012). Accordingly, Calhoun has also failed to demonstrate prejudice, and his argument fails.

(e) Finally, the cumulative prejudice from any assumed deficiencies discussed in Division 2 is insufficient to show a reasonable probability that the results of the proceedings would have been different in the absence of the alleged deficiencies. See

---

[4] Calhoun points to a passing statement made by the State before trial to support his claim that he would have pleaded guilty. Specifically, immediately prior to trial, the trial court inquired as to whether the State had made a plea offer to Calhoun. The State advised the trial court that it had extended a plea offer; that, at some point, Calhoun had expressed an interest in pleading guilty but had rejected the offer; and that the offer was no longer available.

The record does not reflect — and Calhoun has never clarified — when, exactly, he expressed interest in pleading guilty and whether Calhoun was interested in accepting the State's plea offer or his own "counteroffer." Further, trial counsel's testimony from the hearing on the motion for new trial suggests that Calhoun had originally considered pleading guilty but ultimately changed his mind and rejected the offer, resulting in the State's withdrawing its offer.

*Jones v. State*, 305 Ga. 750, 757 (4) (e) (827 SE2d 879) (2019).

Accordingly, Calhoun is not entitled to relief under this theory.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 28, 2020.

Murder. Franklin Superior Court. Before Judge Malcom.

*Nelson Mullins Riley & Scarborough, Erika C. Birg, Lucas A. Westby, Brandon O. Moulard, Shaniqua Singleton, Elizabeth A. Falconer*, for appellant.

*D. Parks White, District Attorney, Brian J. Atkinson, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.