310 Ga. 529
FINAL COPY

S20A1208.  LOPEZ v. THE STATE.

McMILLIAN, Justice.

Nicolas Lopez was convicted of malice murder and possession of a firearm during the commission of a felony in connection with the shooting death of Robert Moon.[1] After his convictions, Lopez waived his right to the assistance of counsel. Representing himself, Lopez now appeals, asserting that (1) his trial counsel labored under a conflict of interest; (2) he otherwise received ineffective assistance of

[1] Moon was shot and killed on May 26, 2017. On September 18, 2017, a Grady County grand jury indicted Lopez for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), possession of a firearm during the commission of a felony (Count 4), and possession of a firearm by a convicted felon (Count 5). At a trial held on December 4 and 5, 2018, a jury found Lopez guilty of Counts 1 through 4, and the State agreed to nolle pros Count 5. The trial court sentenced Lopez to serve a life sentence in prison without the possibility of parole for malice murder and a consecutive term of five years in prison for possession of a firearm during the commission of a felony. Count 2 was vacated as a matter of law, and Count 3 merged with Count 1. Lopez filed a motion for new trial through counsel on December 19, 2018, and subsequently waived his right to the assistance of counsel for further proceedings. Lopez then filed an amended motion for new trial on November 18, 2018. Following a hearing, the trial court denied the motion for new trial on November 21, 2019. Lopez timely appealed, and the case was docketed to the August 2020 term of this Court and thereafter submitted for a decision on the briefs.

counsel; (3) the trial court erred in failing to ensure an accurate transcription of the trial; (4) the trial judge erred in failing to recuse himself; and (5) the trial court erred in recharging the jury. For the reasons that follow, we find no error and affirm.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial shows that on the afternoon of May 26, 2017, Deputy Michael Starling of the Grady County Sheriff's Office responded to a report of gunshots fired in the area of Lopez's property off Bond Road in an unincorporated area of Grady County. The deputy was familiar with the neighborhood because he had previously responded to arguments between Lopez and Moon. When Deputy Starling arrived, he saw Moon in his backyard working on a truck with his brother. He tried to make contact, but Moon shook his head, indicating he did not wish to speak, and pointed toward Lopez's home nearby. Deputy Starling then proceeded to Lopez's home. When Lopez came outside and asked why the deputy was on his property, Deputy Starling could smell alcohol coming from him. Deputy Starling explained to Lopez that someone had called 911 to

2

report gunshots. Lopez became frustrated and started yelling at Moon. Deputy Starling intervened and told Lopez that he could not tell Lopez who had called 911 and that Lopez needed to calm down. Lopez said there would not be any problem and that he was going to go inside and lie down.

Curtis Washington, who lived next door to Moon and across the street from Lopez, testified that his children were playing outside that day when they saw Lopez shooting a gun. They ran inside the house, and when Washington looked outside, he saw Lopez holding a rifle. He called the landlord to complain, and the landlord told him to call the police. A short time later, Lopez came to Washington's home to complain about the police being called. Lopez's attention shifted to Moon, who was still outside with his brother. Lopez stared at Moon and said, "If that motherf***er cross me, I'm going to kill him." Later that evening, Washington saw Lopez walk toward where Moon was standing by Moon's truck, arguing loudly as he advanced. Washington then heard three gunshots. As he called 911, he saw Lopez walk back toward his house, get in his Jeep, and speed off.

3

Washington denied ever seeing Moon with a knife or other weapon that night.

Jessie Barker, Moon's half-brother, testified that he went to Moon's home that day to help him repair his truck. After a few hours, they stopped working to eat a sandwich on the hood of Moon's truck. At that point, Lopez walked over and asked Moon to come out to the road, cursing and yelling about Moon calling the police on him. Moon refused to walk over to Lopez and asked him whether he was carrying a gun. Lopez did not respond, but he walked straight toward Moon and shot him point-blank with a handgun. According to Barker, Moon had no weapons on him that day and made no movement toward Lopez.

Responding officers located two .45-caliber shell casings at the scene and additional .223-caliber shell casings in Lopez's yard. In conducting a search of Lopez's home, officers discovered a .223 assault rifle leaning next to the front door, a .30-06 deer hunting rifle, a single shot 12-gauge shotgun, a single shot 410 shotgun, and other firearm-related objects. They also located a box containing .45-

4

caliber rounds and a receipt for a .45 Taurus pistol, but were unable to recover any .45-caliber firearm. The following day, Lopez turned himself in at the Grady County Sheriff's Office. In a recorded statement, Lopez admitted shooting Moon but claimed he did so in self-defense because Moon tried to attack him with a knife. The State's medical examiner explained that Moon sustained two gunshot wounds, one to his right leg and one to his upper left chest. The bullet that entered Moon's chest inflicted fatal wounds and was recovered from his spine. A GBI firearms examiner testified that the bullet recovered from the autopsy was a .45-caliber bullet consistent with having been fired from a Taurus .45 semi-automatic pistol.

Lopez testified on his own behalf and explained that he had enjoyed living in his quiet neighborhood for many years until new people moved in, causing strange smells and traffic at all hours of the night. He believed the fumes were related to the manufacture of methamphetamine. Lopez continued to have problems with his neighbors, including Moon, who had threatened him with a knife and punched him several months before the shooting and continued

5

to harass him. On the day of the shooting, Moon taunted him and threatened Lopez's wife. Then Moon went to his truck and grabbed a knife and came toward him aggressively. When Moon got within three feet of him while swinging his knife, Lopez explained that he felt his life was in danger. He shot Moon in self-defense and then left town in a panic before later turning himself in.

1. Lopez does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Lopez guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).[2]

2. Lopez asserts that his trial counsel labored under a conflict

---

[2] We remind litigants that this Court will end its practice of considering the sufficiency of the evidence sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. 385, 392 (4) (846 SE2d 83) (2020). This Court began assigning cases to the December term on August 3, 2020.

of interest. In order to prevail on this claim, Lopez must show more than a mere possibility of conflict. He "must show an actual conflict of interest that adversely affected his attorney's performance." *Williams v. State*, 307 Ga. 689, 694 (4) (a) (838 SE2d 314) (2020) (citation and punctuation omitted). Pretermitting whether Lopez preserved this enumeration of error for appeal,[3] he has not made the required showing. Instead, he argues that his trial counsel was "improperly aligned" with the State because he had worked as a prosecutor in the past. As evidence of the alleged conflict of interest, Lopez points to two statements made by his trial counsel. In the first, made during voir dire, trial counsel asked the potential jurors whether he had previously prosecuted a case against anyone on the panel, explaining that he had worked as a district attorney. Second, Lopez complains that his trial counsel called him "excitable" during closing argument. However, the record shows that this statement was made in the following context:

---

[3] See *Thomas v. State*, 298 Ga. 106, 110 (2) (a) (779 SE2d 616) (2015) (appellant's motion for new trial filed in the trial court did not raise conflict-of-interest issue and the issue was therefore not preserved for appeal).

7

Now, I've been a lawyer for almost twenty-two years. I've never had a client as excitable as Nick, and he's excitable because he's literally fighting for his life. He was on the stand, and you know, he says a lot of stuff, but he's never, ever deviated from this. He said it in the interview just a couple of days after the incident, he said it every time I've talked to him and he said it on the stand, unequivocally, Robert Moon had a knife. I was afraid, Robert Moon had a knife.

Lopez has not shown how either statement illustrates an actual conflict of interest or negatively impacted his attorney's performance. This enumeration of error fails.

3. Lopez separately asserts that he was denied constitutionally effective assistance of counsel on several grounds. To succeed on this claim, Lopez must demonstrate both that his trial counsel performed deficiently and that, absent counsel's deficient performance, a reasonable probability exists that the outcome at trial would have been different. See *Strickland v. Washington,* 466 U.S. 668, 687-95 (III) (104 SCt 2052, 80 LE2d 674) (1984). If he fails to satisfy either part of this test, we need not consider the other. See *Richards v. State*, 306 Ga. 779, 781 (2) (833 SE2d 96) (2019). To prove deficient performance, Lopez must show that trial counsel performed "in an

8

objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms." *Reyes v. State*, 309 Ga. 660, 669 (3) (847 SE2d 194) (2020) (citation and punctuation omitted). "A strong presumption exists that counsel's conduct falls within the broad range of professional conduct." Id. (citation and punctuation omitted). "Thus, deficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel to have performed." *Davis v. State*, 306 Ga. 140, 144 (3) (829 SE2d 321) (2019). With these principles in mind, we address each of Lopez's claims in turn.

(a) Lopez argues that trial counsel failed to strike unqualified jurors and to select a racially balanced jury. We first note that Lopez has failed to cite any record evidence to support this claim. See *Dresbach v. State*, 308 Ga. 423, 427 (2) (841 SE2d 714) (2020) ("Arguments and representations made in court briefs do not constitute record evidence to support a finding of fact." (citation and punctuation omitted)). Moreover, "the decision as to which jurors to strike is a strategic decision that, if reasonable, will not support an

allegation that counsel's performance was deficient." *Taylor v. State*, 302 Ga. 176, 178 (2) (805 SE2d 851) (2017). And where, as here, "trial counsel does not testify at the motion for new trial hearing, it is extremely difficult to overcome the presumption that counsel's conduct resulted from reasonable trial strategy." *Brown v. State*, 288 Ga. 902, 908 (5) (708 SE2d 294) (2011) (citation and punctuation omitted). Lopez has not shown that trial counsel's performance was constitutionally defective on this ground.

(b) Lopez also asserts that trial counsel failed to object to the State's request that Investigator Chris Luckey be allowed to remain in the courtroom. However, because Investigator Luckey was the State's chief investigative agent, the trial court would have acted within its discretion in denying an objection on this ground. See OCGA § 24-6-615 (2) (sequestration statute does not authorize exclusion of "[a]n officer or employee of a party which is not a natural person designated as its representative"); *Anderson v. State*, 307 Ga. 79, 88 (5) (834 SE2d 830) (2019). And the failure to make a meritless objection cannot provide the basis upon which to find ineffective

assistance of counsel. See *Mattox v. State*, 308 Ga. 302, 304-05 (2) (840 SE2d 373) (2020).

(c) In two related enumerations of error, Lopez claims that trial counsel failed to properly investigate and introduce all of the GBI's investigative summaries and failed to call GBI Special Agent Marko Jones to testify about his investigative summaries. However, Lopez has failed to show that trial counsel did not properly investigate the case. Nor has he shown that trial counsel's decision not to introduce the summaries or to call Agent Jones to testify was not a matter of reasonable trial strategy. See *Calhoun v. State*, 308 Ga. 146, 151 (2) (b) (839 SE2d 612) (2020) ("[I]n the absence of testimony to the contrary, counsel's actions are presumed strategic." (citation and punctuation omitted)). Moreover, the record shows that trial counsel pursued a strategy of exploring through cross-examination any inconsistencies in the various witnesses' statements, and Lopez has failed to show that this strategy was unreasonable. See *Horton v. State*, __ Ga. __, __ (5) (a) (849 SE2d 382) (2020) ("[D]ecisions as to what witnesses and other evidence to present are matters of trial

11

strategy and are ineffective only if unreasonable ones that no competent attorney would make." (citation and punctuation omitted)); *Morrison v. State*, 303 Ga. 120, 126 (5) (b) (810 SE2d 508) (2018) ("Decisions about what questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel." (citation and punctuation omitted)).

(d) Lopez also asserts that trial counsel failed to conduct a full investigation and obtain a pretrial ruling to suppress his custodial statement, which he alleges was not voluntarily given.[4] "When trial counsel's failure to file a motion to suppress is the basis for a claim

---

[4] In the same enumeration of error, Lopez also argues in passing that his counsel should have moved to exclude or object to portions of various witnesses' testimony. However, "[t]he matter of when and how to raise objections is generally a matter of trial strategy." *Hayes v. State*, 298 Ga. 98, 105 (2) (c) (779 SE2d 609) (2015). And Lopez has not carried his burden of proving that trial counsel's decision in these instances was not a matter of reasonable trial strategy. See *Calhoun*, 308 Ga. at 151 (2) (b). Nor has Lopez attempted to prove plain error in this regard. See *Denson v. State*, 307 Ga. 545, 547-48 (2) (837 SE2d 261) (2019) (To establish plain error, the appellant "must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings." (citation and punctuation omitted)).

of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Harris v. State*, __ Ga. __, ___ (4) (c) (__ SE2d __) (2020) (citation and punctuation omitted). Lopez cannot make this showing. Rather, the record shows that the day after Lopez turned himself in, officers interviewed him for approximately one hour. Before beginning the interview, officers confirmed that Lopez was able to read and write and reviewed a waiver-of-rights form with him. Lopez then initialed and signed the form before agreeing to speak with the officers. Considering the totality of the circumstances, including the video recording of the interview, there is nothing to suggest "excessively lengthy interrogation, physical deprivation, brutality, or other such hallmarks of coercive police activity that would render the resulting statement involuntary." *Perez v. State*, __ Ga. __, __ (2) (848 SE2d 395) (2020) (citation and punctuation omitted). Thus, any motion to suppress filed on this ground would have been meritless, and this enumeration of error cannot serve as the basis for an ineffective assistance claim. See

*Mattox*, 308 Ga. at 304-05 (2).

(e) Lopez argues that trial counsel should have moved for the recusal of the prosecutor because the prosecutor had previously tried an unrelated criminal case against Lopez. However, because Lopez did not raise this claim in his amended motion for new trial, which was his first opportunity to do so, it is not preserved for appellate review by this Court. See *Elkins v. State*, 306 Ga. 351, 361 (4) (a) (830 SE2d 217) (2019) (where claim of ineffective assistance of trial counsel not raised at earliest practicable moment, it is not preserved for appellate review).

(f) Lopez also argues that trial counsel failed to strike eight jurors who were either biased or "medically questionable." We are not persuaded. As explained in Division 3 (a), the decision as to which jurors to strike is a matter of trial strategy. Moreover, "[t]he law presumes that potential jurors are impartial, and the burden of proving partiality is on the party seeking to have the juror disqualified." *Brown v. State*, 295 Ga. 804, 808 (4) (764 SE2d 376) (2014) (citation and punctuation omitted). Lopez's bare assertions

14

are not sufficient to overcome this burden. See *Dresbach*, 308 Ga. at 427 (2). Accordingly, Lopez has not shown that he was denied constitutionally effective assistance of counsel.

To the extent that Lopez argues in the same enumeration of error that the trial court erred in its response to an indication after the jury was sworn that certain jurors did not wish to serve on the jury, we discern no error. The record shows that after receiving notice from the bailiff that some members of the jury somehow indicated they did not want to serve, the trial court stated in open court:

> And I'm going to let you know, I'm not excusing anyone from this jury unless you have a medical emergency or you have an emergency family matter or something like that. The odds of you getting off are going to be slim to almost none.

Neither Lopez nor the prosecutor objected to the trial court's response, and nothing in the record shows that the jurors in question were unqualified or held an opinion of the guilt or innocence of Lopez that was so fixed and definite that they would be unable to set such an opinion aside and decide the case based upon the evidence and

15

the court's charge. See *Collins v. State*, 308 Ga. 608, 612 (3) (842 SE2d 811) (2020). Because Lopez is unable to show that a juror was unqualified to serve, he cannot show that the trial court abused its broad discretion in refusing to replace any jurors who may not have wished to serve. See *Ware v. State*, 305 Ga. 457, 462 (3) (826 SE2d 56) (2019) (trial court has broad discretion in determining whether to replace a juror with an alternate for good cause).

4. Lopez alleges that the trial court failed to ensure that an accurate transcription of the trial was secured. Although OCGA § 17-8-5 requires that the presiding judge have the testimony taken down for the trial of all felonies, when the transcript or record does not fully disclose what happened at trial, the burden is on the complaining party to have the record completed in the trial court. See *Bamberg v. State*, 308 Ga. 340, 349 (2) (839 SE2d 640) (2020) (if a criminal defendant believes the transcript omits or misrepresents a necessary part of the proceeding, he has the responsibility to seek

16

to correct the transcript in that respect); OCGA § 5-6-41 (g).[5] Lopez has not shown that any part of the transcript was incomplete or inaccurate.

5. Lopez asserts that the trial court erred in denying his pro se motion to suppress the admission of his custodial statement at trial. However, a criminal defendant "does not have the right to represent himself and also be represented by an attorney." *White v. State*, 302 Ga. 315, 319 (2) (806 SE2d 489) (2017) (citation and punctuation omitted). Thus, a pro se filing by a represented party is a legal nullity without effect. See id. Moreover, for the reasons stated in Division 3 (d), the record shows that Lopez's statement was freely and voluntarily given. Accordingly, this enumeration of error fails.

6. Lopez argues that the trial judge erred in failing to recuse himself because he had presided over an unrelated criminal case against Lopez only 18 months prior to the trial in this case. But

---

[5] We also note that, although Lopez complains that the State's Exhibit 23 (the video recording of Lopez's custodial statement) was not transcribed, the record shows that the parties agreed that it need not be reported because it was made part of the record and would be available for appellate review.

17

Lopez failed to preserve this enumeration of error for review. "When a party learns of potential grounds for disqualification of a trial judge, he must promptly move to recuse or the issue of disqualification is not preserved for appellate review." *Keller v. State*, 308 Ga. 492, 507 (10) (842 SE2d 22) (2020) (explaining that to allow otherwise would be to sanction gamesmanship). See also Uniform Superior Court Rule 25.1 (requiring recusal motion and accompanying affidavits to be filed within five days of learning alleged grounds for disqualification).

7. Lastly, Lopez asserts that the trial court erred in responding to an inquiry from the jury. We disagree. The record shows that during deliberations the jury asked the trial court for the definition of felony murder and aggravated assault, "possibly with an example." The trial court declined to give an example, but recharged the jury, without objection from either party, on the definitions of felony murder and aggravated assault. Because Lopez did not object, we are limited to reviewing this charge for plain error. See *Russell v. State*, __ Ga. __, __ (3) (a) (848 SE2d 404) (2020). To establish plain

18

error, Lopez "must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Denson v. State*, 307 Ga. 545, 547-48 (2) (837 SE2d 261) (2019) (citation and punctuation omitted).

"In reviewing a challenge to the trial court's jury instruction, we view the charge as a whole to determine whether the jury was fully and fairly instructed on the law of the case." *Russell*, __ Ga. at __ (3) (a) (citation and punctuation omitted). "A jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete statement of law." *Jackson v. State*, 306 Ga. 475, 477 (2) (831 SE2d 755) (2019) (citation and punctuation omitted). Because the trial court correctly recharged the jury as to the definitions of felony murder and aggravated assault, and because Lopez has not shown that the trial court was required to provide an example in its recharge, he cannot show error, much less plain error. Accordingly, this enumeration of error is without merit. See *Dixon*

19

*v. State*, 309 Ga. 28, 35 (2) (a) (843 SE2d 806) (2020) (no error where trial court provided a correct and complete statement of the law applicable to the charges).

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and Boggs, Peterson, Bethel, and Ellington, JJ., concur. Warren, J., not participating.*

DECIDED DECEMBER 7, 2020.
Murder. Grady Superior Court. Before Judge Chason.
Nicolas Lopez, *pro se.*
*Joseph K. Mullholland, District Attorney, Moruf O. Oseni, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.