NOT FOR PUBLICATION

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10207

_____

GARY MICHAEL HILTON,

*Petitioner-Appellant,*

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:15-cv-00542-MCR

_____

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and ABUDU, Circuit Judges.

PER CURIAM:

Gary Michael Hilton, a Florida prisoner sentenced to death following his convictions for first-degree murder, kidnapping, and grand theft, appeals the district court's denial of the habeas corpus

petition he brought pursuant to 28 U.S.C. § 2254.  We granted Hilton a certificate of appealability on four issues:

> (1) Whether Hilton received ineffective assistance because his defense team was in disarray prior to and during trial;

> (2) Whether Hilton received ineffective assistance because trial counsel failed to develop and present a cohesive defense for the guilt and penalty phases;

> (3) Whether Hilton received ineffective assistance because appellate counsel failed to appeal the denial of a change of venue; and,

> (4) Whether Hilton received ineffective assistance because appellate counsel failed to appeal the denial of for-cause challenges during jury selection.

After careful review, and with the benefit of oral argument, we affirm his death sentence and conviction.[1]

## I.    STANDARD OF REVIEW

"When a state court has adjudicated a habeas petitioner's claim on the merits, we review its decision under [the] 'highly deferential' standards" of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *Pye v. Warden, Ga. Diagnostic Prison*,

---

[1] We write only for the parties who already are familiar with the relevant facts and proceedings in this case, so we include only what is necessary to explain our decision.

50 F.4th 1025, 1034 (11th Cir. 2022) (*en banc*) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)). When that deference applies, a federal court may grant habeas relief only if the decision of the state court (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts" considering the "evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1346 (11th Cir. 2024). When AEDPA deference is not appropriate, we instead apply *de novo* review. *Calhoun*, 92 F.4th at 1346; *Adkins v. Warden*, 710 F.3d 1241, 1250 (11th Cir. 2013).

"'[C]learly established federal law' for purposes of [Section] 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). "[A]n unreasonable application of federal law" under Section 2254(d)(1) "is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (emphases omitted). To show an unreasonable application of federal law, a state prisoner seeking federal habeas relief "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## II.    DISCUSSION

Each of the claims before us involves allegations of ineffective assistance of counsel, which are governed by *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under *Strickland,* to make a successful claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.  *Id.*  Since *Strickland* requires satisfaction of both prongs, if a petitioner fails to satisfy one prong, the other prong need not be considered.  *Id.* at 697.

In order to satisfy the deficient performance prong, a petitioner must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id.* at 687.  The proper measure of attorney performance is reasonableness under prevailing professional norms.  *Id.* at 688.  As to the prejudice prong, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A "reasonable probability" is one "sufficient to undermine confidence in the outcome."  *Id.*; *see also Thornell v. Jones*, 602 U.S. 154, 163 (2024).  "This standard does not require a defendant to show that it is more likely than not that adequate representation would have led to a better result, but '[t]he difference' should matter 'only in the rarest case.'"  *Thornell*, 602 U.S. at 163–64 (quoting *Strickland*, 466 U.S. at 697).  We take each claim in turn.

### A. Defense Team's Disarray

In his motion for post-conviction relief, Hilton presented generalized claims regarding the trial team's disarray, including a lack of coordination, professionalism and cohesion amongst the trial team; the revolving door of attorneys representing Hilton and frequent changes in the assigned roles; and general lack of preparedness. However, Hilton only presented one specific allegation of deficient performance in his post-conviction motion—defense counsel's failure to anticipate the testimony of Officer Caleb Wynn. *Hilton v. State*, 326 So. 3d 640, 650 (Fla. 2021). Based on these allegations of deficiency, the Florida Supreme Court concluded that Hilton failed to satisfy *Strickland*'s prejudice requirement because he did not show that there is a reasonable probability that, but for the trial team's behavior, the outcome of the case would have been different. *Id.; see also Strickland*, 466 U.S. at 694. Under these circumstances, we cannot say that the state court's decision was unreasonable.[2] *Harrington*, 562 U.S. at 103 (explaining

---

[2] Hilton attempted to raise new allegations of deficient performance in his Section 2254 habeas petition; however, those claims fail under *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* permits courts to excuse a default of a substantial ineffective assistance of trial counsel claim if initial-review collateral counsel is ineffective in failing to properly raise the claim. *Id.* at 14. To overcome such default, a petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* Hilton points to lead counsel Ines Suber's deficient performance in: (1) questioning and challenging potential jurors, (2) not fully understanding the scientific evidence, (3) being unprepared at an unspecified motions hearing, and (4) failing to develop a coherent defense theory. However, it is not enough to simply say that

that a state prisoner must show that the state court's ruling on the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

## B. The Defense Team's Split Strategy

Next, the Florida Supreme Court denied Hilton's claim that the lack of a cohesive strategy between the guilt and penalty phases rendered counsel's assistance ineffective. *Hilton*, 326 So. 3d at 650. The Florida Supreme Court reasonably concluded that this claim failed to meet *Strickland*'s prejudice prong. *Id.*[3]

There was overwhelming evidence of Hilton's guilt of a particularly heinous crime, and it is not reasonable to conclude that any mitigating evidence Hilton claims should have been presented likely would have changed the outcome at either stage. *Pye,* 50 F.4th at 1049. There is no indication that there would have been a different outcome if not for the split strategy. *See Barwick v. Sec'y,*

---

counsel was "not doing a good job" or "differing from her reputation for meticulousness" to demonstrate prejudice. Based on the record, there is not a reasonable probability that absent these generalized errors, "the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.

[3]Although the Florida Supreme Court did not clearly articulate why it did not find prejudice, its conclusion is reasonable in light of the record. *Pye,* 50 F.4th at 1036 ("[W]e are not required, in assessing the reasonableness of a state court's reasons for its decision, to strictly limit our review to the particular justifications that the state court provided."(emphasis omitted)).

*Fla. Dep't of Corr.*, 794 F.3d 1239, 1251 (11th Cir. 2015) ("Based upon . . . the fact that the aggravating circumstances would have still greatly outweighed any mitigating circumstances, and a unanimous jury recommendation, we cannot say that the Florida Supreme Court was unreasonable when it determined that its confidence in the sentence imposed was not undermined by any alleged deficient performance by [counsel]."). Therefore, Hilton has not shown that the state court's decision "was so lacking in justification" that he is entitled to habeas relief. *Harrington*, 562 U.S. at 103.

### C. The Denial of the Request for a Change of Venue

The Florida Supreme Court denied Hilton's claim for ineffective assistance of counsel arising from appellate counsel's failure to challenge the denial of venue because it concluded that Hilton failed to satisfy either prong of *Strickland*. *Hilton*, 326 So. 3d at 652–53. The court reasoned that Hilton did not identify "any specific biased juror," and failed to show that any jurors who may have been actually biased were not properly rehabilitated. *Id.* at 652. The "actual bias" standard the court imposed derived from language in *Carratelli v. State,* 961 So. 2d 312, 324 (Fla. 2007). There, the Florida Supreme Court rejected a Florida intermediate appellate court's application of *Strickland*'s prejudice standard, which it described as "lenient," for the "much higher standard" it deemed more appropriate for ineffective assistance of counsel claims arising from failures of appellate counsel in post-conviction proceedings. *Carratelli*, 961 So. 2d at 324. The Florida Supreme Court also found that Hilton failed to articulate how the denial of the change of

venue affected the outcome of his case. *Hilton,* 326 So. 3d at 652–53.

In *Guardado v. Secretary, Florida Department of Corrections*, 112 F.4th 958, 991 (11th Cir. 2024), we held that *Carratelli*'s "actual bias" standard was an unreasonable application of clearly established law, as it required a petitioner to go far beyond *Strickland*'s "reasonable probability" standard in order to show prejudice. Accordingly, because the Florida Supreme Court unreasonably applied clearly established law in its reliance on the *Carratelli* prejudice standard, we review this claim *de novo*. *Id.* at 994.

Even under *de novo* review, Hilton failed to show that he was prejudiced by appellate counsel's failure during his direct appeal to challenge the trial court's denial of his request for a change of venue. Where an ineffective assistance of counsel claim is based on appellate counsel's failure to raise a claim, "[c]ounsel's performance will be deemed prejudicial if we find that 'the neglected claim would have a reasonable probability of success on appeal.'" *Philmore v. McNeil*, 575 F.3d 1251, 1265 (11th Cir. 2009) (quoting *Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir. 1991)). Importantly, an attorney is not required to raise every nonfrivolous ground on appeal in a merits brief. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Nor is counsel required to raise "every 'colorable' claim suggested by a client." *Jones v. Barnes*, 463 U.S 745, 754 (1983). Instead, "an effective attorney will weed out weaker arguments, even though they may have merit." *Philmore*, 575 F.3d at 1264.

Hilton's proposed challenge to the denial of his request for a change of venue was unlikely to succeed on direct appeal. In cases involving extensive pretrial publicity, the pertinent question in reviewing a trial court's decision not to change venue is whether the jurors could impartially judge the defendant's guilt. *See Patton v. Yount*, 467 U.S. 1025, 1035 (1984) ("The relevant question is not whether the community remembered the case, but whether the jurors at [defendant's] trial had such fixed opinions that they could not judge impartially the guilt of the defendant."). In *Skilling v. United States*, 561 U.S. 358, 396 (2010) (citing *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991)), the Supreme Court instructed lower courts that "[i]n reviewing claims of this type, the deference due to district courts is at its pinnacle: 'A trial court's findings of juror impartiality may be overturned only for manifest error.'" The record shows that the trial judge asked extensive questions of the jurors who acknowledged some level of familiarity with the case, and the trial judge rehabilitated those jurors through additional questioning to confirm their ability to be impartial. In the absence of manifest error in the trial court's impartiality findings, it is unlikely that any challenge on direct appeal would have been successful. *Id.* at 396. Therefore, we find no such error here.

Thus, because Hilton fails to show that this claim would have been meritorious if raised on direct appeal, we conclude that he failed to demonstrate that he was prejudiced by appellate counsel's failure to raise this claim, even under *de novo* review.

### D. Appellate Counsel's Failure to Appeal For-Cause Challenges Made During Voir Dire

Finally, Hilton argues that his appellate counsel was ineffective for failing to challenge the trial court's rejection of his for-cause challenges concerning allegedly biased jurors. The Florida Supreme Court denied the claim, in part, as procedurally barred because Hilton already had unsuccessfully raised the issue in his post-conviction motion (in which he claimed that trial counsel failed to preserve any objection regarding the for- cause challenges). *Hilton*, 326 So. 3d at 654, 654 n.3. The court also denied the claim because Hilton's failure to properly preserve his for-causes challenges "would have precluded a meritorious appeal of those issues." *Id.* Because the Florida Supreme Court again applied *Carratelli*'s improper heightened prejudice standard, *id.*, we review this claim *de novo* as well.

Hilton contends that, as a result of the trial court's ruling, eighteen venire members survived the publicity-centered round of *voir dire* despite knowledge of Hilton's other arrests, causing the defense to rely on peremptory challenges which ultimately resulted in two empaneled jurors who admitted to knowing about Hilton's other crimes. However, even under *de novo* review, Hilton fails to show that this claim likely would have been meritorious on direct appeal, precluding a finding of prejudice.

Contrary to Hilton's assertion, "jurors need not . . . be totally ignorant of the facts and issues" prior to being seated. *Murphy v. Florida*, 421 U.S. 794, 800 (1975). Rather, "'[i]t is sufficient if the

juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *Id.* (quoting *Irvin v. Dowd*, 336 U.S. 717, 723 (1961)). The record shows that the seated jurors had not made up their mind about Hilton's guilt, even if they had some level of knowledge about the case and the other murders. *Cf. Patton*, 467 U.S. at 1029–30, 1034 n.10, 1033 (concluding that although 8 out of 14 seated jurors and alternates had "at some time . . . formed an opinion as to [defendant's] guilt," the "particularly extensive" *voir dire* confirmed that "time had weakened or eliminated any" bias previously held). Hilton has presented no evidence, nor points to any testimony in the record, which could reasonably call the trial court's impartiality determination into question. Accordingly, because Hilton fails to show that this claim would have been meritorious if raised on direct appeal, he fails to demonstrate that he was prejudiced by appellate counsel's failure to raise this claim.

## III.    CONCLUSION

The Florida Supreme Court did not unreasonably apply *Strickland*'s prejudice standard to Hilton's claims that trial counsel's general disarray or split trial strategy rendered them ineffective. Although the Florida Supreme Court unreasonably applied *Strickland* to Hilton's claims of ineffective assistance of appellate counsel, on *de novo* review, we conclude that Hilton failed to show that he was prejudiced by counsel's performance. Therefore, we affirm the district court's denial of Hilton's petition for habeas corpus.

**AFFIRMED.**

25-10207          ABUDU, J., Concurring          1

ABUDU, Circuit Judge, Concurring:

I concur in the majority opinion. I write separately to acknowledge that, while not prejudicial, trial counsel's performance during the guilt and penalty phases was deficient as even one of the lead attorneys in Hilton's case herself acknowledged. While the Supreme Court has permitted reviewing courts to resolve claims of ineffective assistance of counsel on the prejudice prong alone, we are not precluded from addressing both the performance and prejudice prongs, and there is value in doing so here. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984).

The Supreme Court's decision in *Strickland* represented an important shift in the Court's jurisprudence to ensure stricter compliance with the Sixth Amendment right to the effective assistance of counsel. 466 U.S. at 687; *see also* Richard P. Rhodes, *Strickland v. Washington: Safeguard of the Capital Defendant's Right to Effective Assistance of Counsel*, 12 B.C. THIRD WORLD L. J. 121, 122 (1992) ("In *Strickland* . . . the Court first attempted to establish a uniform standard for determining when defense counsel had functioned ineffectively."). Justice Marshall, however, predicted that the option for courts to skip the "deficient performance" prong would result in a system that promotes poor legal representation as long as there is no debate about the reliability of the case's outcome. *Strickland*, 466 U.S. at 707–08 (Marshall, J., dissenting). This was because, "[i]n essence, the majority ha[d] instructed judges called upon to assess claims of ineffective assistance of counsel to advert to their own intuitions regarding what constitutes 'professional' representation,

2                    ABUDU, J., Concurring                    25-10207

and ha[d] discouraged them from trying to develop more detailed standards governing the performance of defense counsel." *Id.* at 708.

As courts continue to give substantial deference to counsel's decisions and resolve *Strickland* claims solely on the prejudice prong, attorneys who perform deficiently—even for reasons that might be understandable—will not be held accountable.[1] Our decision not to identify and acknowledge the deficiencies in an attorney's performance, perhaps especially in death penalty cases, does not advance the fuller goal of the Sixth Amendment which does and should set a high standard for attorney performance, regardless of a case's outcome.

---

[1] It is not just litigants seeking to hold counsel accountable. Indeed, practitioners are taking measures themselves to ensure that Sixth Amendment protections are upheld and deficient performance is remedied. For example, a number of public defender offices across the country have brought lawsuits alleging that they cannot provide effective counsel because of a lack of funding. *See, e.g*, *Kuren v. Luzerne Cnty.*, 146 A.3d 715, 718 (Pa. 2016) (finding that cause of action existed where class of indigent criminal defendants alleged prospective, systemic violations of right to counsel due to county's underfunding of public defender's office); *see also Betschart v. Oregon*, 103 F.4th 607, 613 (9th Cir. 2024) (affirming habeas relief for indigent defendants and acknowledging "Sixth Amendment nightmare" resulting from lack of funding for public defense throughout the state of Oregon). Thus, attorneys dedicated to providing effective assistance recognize institutional barriers to securing that right for their clients, even when the outcome of a case might nevertheless have been the same.

In Hilton's case, the trial team objectively was a mess. *Strickland*, 466 U.S. at 688 (explaining that counsel's representation is deficient if it falls "below an objective standard of reasonableness"). While it is not surprising to find some conflict amongst a trial team in a case of this magnitude, the communication between the trial team was not just poor; it was non-existent. According to Ines Suber, lead counsel for the guilt stage, "there was no communication between the lawyers." As a result, there was no "communication . . . on what strategy should be implemented on behalf of [Hilton]." As an experienced capital trial lawyer, Suber knew just how important it was "to have a narrative . . . [and] to weave it together cohesively for the jury to respond to it." She explained that "the worse the case the stronger your narrative better be in explaining to the jury why you should not kill this man."

Despite understanding the importance of a cohesive litigation team, under Suber's leadership the trial team's lack of communication prevented them from creating an organized and unified narrative to carry through both critical stages of this death penalty case. *See Rowland v. Chappell*, 876 F.3d 1174, 1184–85 (9th Cir. 2017) ("To perform effectively in the penalty phase of a capital case, counsel must conduct sufficient investigation and engage in sufficient preparation to be able to present and explain the significance of all the available mitigating evidence. . . . [F]ailure to timely prepare for the penalty phase can constitute deficient performance." (quotation marks and citation omitted)). The trial team members respectfully acknowledged such failures during the post-conviction

hearing, as they did not hesitate to call aspects of their own performance deficient.

As the majority opinion explains, Hilton was not prejudiced by counsel's deficient performance and, therefore, cannot succeed on his ineffective assistance of counsel claims. Nevertheless, the performance prong warrants our attention here because trial counsel's behavior was particularly concerning, and Hilton faced not just a loss of his liberty but of his life. *See, e.g., Davis v. Comm'r, Ala. Dep't of Corr.*, 167 F.4th 1144, 1162–63, 1163 n.24 (11th Cir. 2026) (Abudu, J., dissenting) (addressing ways in which the Sixth Amendment's protections should be particularly heightened in the capital context). Simply because a defendant cannot show he was prejudiced by counsel's performance should not mean that courts always avoid identifying and acknowledging instances where defendants were deprived of the type of representation our system relies on to function. Here, although Hilton ultimately was not prejudiced by counsel's deficient performance, we should still denounce the representation he received.